UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JASON M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 3:25-cv-00271-RLY-CSW |
| | ) |
| FRANK J. BISIGNANO Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON**
**APPROPRIATE DISPOSITION OF THE ACTION**

This matter is before the Honorable Crystal S. Wildeman, United States Magistrate Judge, pursuant to an Entry Referring Matter to Magistrate Judge, to conduct and issue a report and recommendation regarding the appropriate disposition of this matter.  (Dkt. 12).  Claimant, Jason M., seeks judicial review of the Social Security Administration's ("SSA") decision denying his application for Supplemental Security Income ("SSI") benefits.  (Dkt. 1).  For the following reasons, the Magistrate Judge recommends the Commissioner's decision be **AFFIRMED.**

I.    **BACKGROUND**

On August 2, 2023, Claimant filed his application for SSI, alleging disability beginning January 1, 2023.  (Dkt. 9-2 at 11; R. 10).  Following a hearing, Administrative Law Judge ("ALJ") Brandie Hall issued an unfavorable decision on January 27, 2025. (Dkt. 9-2 at 8; R. 7).  Claimant's applications were denied initially and on reconsideration.  (Dkt. 11 at 2).

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The ALJ applied the five-step sequential evaluation process to determine whether Claimant met the standard for "disabled" as defined under the Social Security Act. (Dkt. 9-2 at 13– 22; R. 12– 21).

In his decision, the ALJ found:

- At Step One, Claimant has not engaged in substantial gainful activity since August 2, 2023, the application date. (20 CFR 416.971). (*Id*. at 13; R. 12).

- At Step Two, Claimant had the following severe impairments: generalized anxiety disorder and major depressive disorder. (20 CFR 416.920(c)). (*Id*.).

- At Step Three, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (*Id*.).

- After Step Three but before Step Four, Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, and carry out simple routine work instructions; sustain attention, concentration, persistence, and pace for simple work tasks; make simple work related decisions; adapt to occasional workplace changes; have occasional interaction with coworkers and supervisors; no interaction with the public; and work requiring an hourly production pace. (*Id*. at 16; R. 15).

- At Step Four, the Claimant has no past relevant work. (*Id*. at 20; R. 19).

- At Step Five, the ALJ noted that considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 416.969 and 416.969a). (*Id*.).

Ultimately, the ALJ concluded Claimant was not disabled as defined in the Social Security Act. (*Id*. at 21–22; R. 20–21). The Appeals Council denied Claimant's request for review on October 14, 2025. (Dkt. 11 at 2). On December 8,

2025, Claimant filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of the ALJ's decision.  (Dkt. 1).

## II.    STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).

Importantly, "[a]lthough this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.  *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v.*

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning SSI and disability insurance benefits ("DIB"), which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520.  227 F.3d at 868.  Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920.  The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

*Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  The substantial evidence standard of review "is light" and "deferential."   *Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

## III.    DISCUSSION

The ALJ properly evaluated the opinions of the State Agency Psychologists ("SAP") and the opinion of Claimant's treating therapist when formulating Claimant's RFC.

Claimant contends the ALJ committed reversible error by failing to adequately explain why she rejected portions of the SAP's opinions and by failing to specifically address the SAP's checkbox limitations for "maintaining attention and concentration for extended periods, keeping a schedule, and working at a consistent pace." (Dkt. 11 at 9–11).  Claimant further argues the ALJ erred by failing to adequately explain her rejection of the treating therapist's opinion.  (*Id*. at 12–16).  However, a review of the ALJ's decision proves otherwise.  The ALJ properly evaluated the supportability and consistency of both opinions when formulating Claimant's RFC.  The ALJ also properly addressed the checkbox limitations and discussed why she did not find them persuasive.

When evaluating the persuasiveness of a medical opinion, [t]he most important" factors an ALJ considers are "supportability and consistency."  *Cain v. Bisignano*, 148 F.4th 490, 496–97 (7th Cir. 2025).  In determining supportability and consistency, "an ALJ is subject 'to only the most minimal of articulation requirements.'"  *Id*. (quoting *Warnell* at 1053).  Remand is appropriate only "if the ALJ's decision is not based on substantial evidence or if the ALJ committed legal error."  *Id*. at 498.

### A.  STATE AGENCY PSYCHOLOGISTS' OPINIONS

#### i.  SUPPORTABILITY AND CONSISTENCY

The ALJ evaluated both of the SAP's opinions and noted that "[t]he state agency psychological consultants' (William A. Shipley, Ph.D. and Joelle J. Larsen, Ph.D.) mental assessments are generally persuasive." (Dkt. 9-2 at 19).

SAP Dr. Shipley evaluated Claimant in December of 2023, and SAP Dr. Larsen evaluated Claimant in July of 2024, on reconsideration.  (Dkt. 9-3 at 9; 13).  Claimant argues the ALJ erred by failing to "identify any relevant factor that would actually undermine the persuasiveness of the medical opinions."  (Dkt. 11 at 9).

An ALJ properly evaluates the persuasiveness of a medical opinion when "the ALJ considers the following factors: supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion."  *Cain*, 148 F.4th at 496-97.  The ALJ is required to explain her consideration of supportability and consistency, "but need not address the remaining factors."  *Id*.

The Seventh Circuit has explained that an ALJ adequately considers supportability and consistency when she outlines the portions of the opinion that are either unsupported or supported by other evidence and addresses whether portions of the opinion are internally consistent or inconsistent.  *See id*. at 498.  The ALJ met this standard when she evaluated the medical opinion evidence.

Specifically, the ALJ found the SAP's mental assessments were "generally persuasive."  (Dkt. 9-2 at 19; R. 18).  Although the ALJ noted that the SAP's opinions were "expressed in non-vocationally relevant or contemporary agency accepted language," the ALJ nevertheless determined the opinions were "generally well supported by the findings cited within the assessment including the claimant's reported abilities (childcare for three-year-old, prepare meals, drive, perform chores, shop) and treating exam (well groomed, cooperative, average cognition, intact memory, relaxed mood)."  (*Id*. at 19–20; R. 18–19).  Additionally, the ALJ found the opinions "consistent with the other evidence of record including the conservative treatment received (medication, therapy) and the longitudinal mental status exams across multiple providers (varying mood and affect but otherwise intact including memory, attention, judgment, insight)."  (*Id*. at 20; R. 19).  In crafting a more restrictive RFC, the ALJ also noted that the "[C]laimant is more limited in adapting

-6-

and managing oneself in view of some mood variability referenced in counseling notes." (*Id.*).

Contrary to Claimant's contention that the ALJ "replace[d] the [SAP's] language with her own phrasing based on no more than a hunch," the ALJ properly evaluated the SAP's opinions before ultimately determining the RFC. The ALJ met the minimal articulation requirement by providing an explanation for how the evidence lead to her conclusions, which is sufficient for this reviewing court 'to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell* at 1054; (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). As such, there is no reversible error on this point.

### ii. CHECKBOX LIMITATIONS

Similarly, Claimant argues the ALJ erred by failing to specifically address the SAP's checkbox limitations. (Dkt. 11 at 9–11). An ALJ is required to consider whether the consultants' narrative RFC assessments "adequately encapsulate[d] and translate[d]' the checklist." *Pavlicek*, 994 F.3d at 783 (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). In doing so, an ALJ may rely on a narrative RFC if it is consistent with the checklist ratings. *See id.* Here, the SAP's narratives were consistent with the checkbox findings. Specifically, the SAP's checklists indicated Claimant had

> no significant limitations in the majority of the functional areas, including no significant limitations in the ability to carry out detailed and very short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and making simple work-related decisions.

(Dkt. 14 at 8; *see also* Dkt. 9-3 at 7-8, 15; R. 65–66, 73).

> The SAP's checklists also

> found [Claimant] would have moderate limitations . . . in: maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions

> from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and accepting instructions and responding appropriately to criticism from supervisors.

(*Id.*).

The SAP's checklists found moderate limitations in Claimant's ability to interact appropriately with the general public. (Dkt. 9-3 at 8, 15; R. 66, 73). In this case, the checklist findings are consistent with the SAP's narrative findings that Claimant could "understand, carry out and remember simple instructions, make judgments commensurate with functions of simple, repetitive tasks, respond appropriately to brief supervision and interactions with coworkers and work situations, and deal with changes in a routine work setting." (*Id.*). Additionally, as discussed *supra*, the ALJ found the SAP's opinions generally persuasive, explained why, and chose to assign a more restrictive RFC, including a limitation on only occasional workplace changes and work not requiring an hourly production pace. (Dkt. 9-2 at 16; R. 15).

### B. TREATING THERAPIST'S OPINION

The ALJ also analyzed the opinion of Claimant's treating therapist, Stacy Moore-Nolan. Claimant challenges the ALJ's supportability determination on this opinion and contends the ALJ failed to explain why Moore-Nolan's citation of clinical abnormalities was not well supported. (Dkt. 11 at 13–15). Claimant contends the ALJ's "real problem is that Ms. Moore-Nolan took into account [Claimant's] subjective symptom report." (*Id.* at 14).

As already reminded, an ALJ adequately considers supportability and consistency when she outlines the portions of the opinion that are either unsupported or supported by other evidence and addresses whether portions of the opinion are internally consistent or inconsistent. *See Cain,* 148 F.4th at 498.

The ALJ did so here with regard to the treating therapist's opinion. The ALJ just happened to find reason to discount portions of that opinion. In evaluating Ms. Moore-Nolan's opinion, the ALJ stated, "[t]he levels of limitation assessed

throughout this opinion form are not well supported by the findings cited within the opinion." (Dkt. 9-2 at 19; R. 18). The ALJ cited examples, including that Ms. Moore-Nolan's opinion relied entirely on Claimant's subjective reports whereas "the corresponding Lifespring treating notes found in the record were largely unremarkable but for varying mood and affect." (*Id*.).

Additionally, the ALJ evaluated consistency of the findings and determined Ms. Moore-Nolan's opinion was inconsistent with the other evidence of record. Specifically, the ALJ stated:

> [t]he record documents the [C]laimant has had conservative treatment including medication management and therapy sessions twice a month. Objective findings from multiple providers across the period under consideration are largely unremarkable but for varying mood and affect noted in mental health treating notes. Lastly, the undersigned notes the limits are inconsistent with the claimant's reported abilities including providing childcare (reported he is a stay at home dad), driving, and independently managing his own healthcare/treatment.

(*Id*.).

In short, the ALJ determined after her thorough review of the record that Ms. Ms. Moore-Nolan's opinion was not persuasive because it did not align with objective findings from other medical providers, as well as the Claimant's own testimony about his abilities. She noted that while the findings supported the presence of medically determinable mental impairments, those findings did not align with, and therefore did not support, the restrictive level of limitations assessed by Ms. Moore-Nolan.

Because the ALJ explained her analysis on the supportability and consistency of Ms. Moore-Nolan's opinion, substantial evidence supports the ALJ's decision.

//
//
//

C. CONCLUSION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** the ALJ's decision be **AFFIRMED.**

You are hereby notified the District Judge may reconsider any pretrial matter assigned to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  Any Party shall have fourteen (14) days from the date of service to file written objections to this Report and Recommendation.

**SO RECOMMENDED** this 21st day of July 2026.

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Distributed electronically to all ECF-registered counsel of record.**